# **EXHIBIT C**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

In re                                                                          Chapter 11

FIRESTAR DIAMOND, INC., *et al.*,                       Case No. 18-10509 (SHL)

                     Debtors.                              (Jointly Administered)

-------------------------------------------------------x

### MEMORANDUM OF LAW IN SUPPORT OF MOTION OF THE UNITED STATES TRUSTEE FOR THE APPOINTMENT OF AN EXAMINER PURSUANT TO SECTION 1104(c) OF THE BANKRUPTCY CODE

William K. Harrington, the United States Trustee for Region 2 (the "**United States Trustee**"), respectfully submits this memorandum of law in support of its motion for the appointment of an examiner in the above-referenced cases pursuant to section 1104(c) of title 11, United States Code (the "**Bankruptcy Code**"). In support of this motion (the "**Motion**"), the United States Trustee respectfully states as follows:

### PRELIMINARY STATEMENT

The United States Trustee seeks the appointment of an examiner, pursuant to Section 1104(d) of the Bankruptcy Code. The ultimate owner of each of the debtors in these cases is Nirav Modi (**"Modi"**). According to press and other reports, Modi has been charged by government officials in India in connection with fraudulent and unauthorized transactions at Punjab National Bank. Mr. Modi is an internationally recognized jeweler and diamond dealer. An examiner should be appointed to provide the Court, the United States Trustee and creditors in this case with transparency and clarity as to the role, if any, that Modi plays or has played with respect to these Chapter 11 cases. Specifically, as an independent fiduciary, the Examiner would investigate the relationship

1

between the debtors and any entity under the direct or indirect control of Modi (the "**Modi Entities**") for the purpose of determining (1) whether and to what extent, if any, Modi or the Modi Entities have the ability to direct and/or influence the conduct, decisions or actions taken by the Debtors in these Cases; (2) whether any current officer or director of the Debtors actively and knowingly participated in fraud or dishonesty in the management of the affairs of the Debtors; (3) whether any claims or causes of action in favor of the Debtors may arise from the Alleged Fraud Circumstances; (items (1) through (3) referred to as the "Determinations") and (4) otherwise perform the duties of an examiner as contained within in the scope of Section 1106(a)(3)&(4) of the Bankruptcy Code solely to the extent required or necessary to the foregoing Determinations (collectively, the "Investigation"). Upon information and belief, based upon extensive discussions with this Office, the Debtors have consented to the appointment of an Examiner in these cases. For these reasons and as discussed below, the United States Trustee respectfully urges the Court to direct the United States Trustee to appoint an Examiner, pursuant to section 1104(d) of the Bankruptcy Code.[1]

## FACTS

**A.** **General Background**

1. On February 26, 2018 (the "Petition Date"), Firestar Diamond, Inc. ("**FDI**"), Fantasy, Inc. ("**FI**"), and A. Jaffe, Inc. ("**AJI**") (collectively, the "**Debtors**") each commenced a voluntary case under Chapter 11 of the Bankruptcy Code. *See* Voluntary Petitions, SDNY Case Nos. 18-10509 (SHL), 18-10510 (SHL), 18-10511 (SHL), ECF Doc. No. 1; *see also* Declaration of Richard C. Morrissey ("**Morrissey**

---

[1] The debtors, by their counsel, have expressed consent to the appointment of an examiner under Section 1104(c)(2) of the Bankruptcy Code in the scope set forth in the proposed Order that is attached to the Motion. *See* Morrissey Decl., ¶ 7.

2

**Decl.**"), attached hereto and made a part hereof, ¶ 1. The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. Morrissey Decl., ¶ 1. On March 9, 2018, the Court entered an Order directing that these cases be jointly administered. ECF Doc. No. 24; Morrissey Decl. ¶ 2.

2.  To date, no Official Committee of Unsecured Creditors has been appointed in these cases. Morrissey Decl., ¶ 3.

3.  The Debtors are fine jewelry wholesalers. *See* Declaration of Mihir Bhansali, President of the Debtors, Containing Information Required Pursuant to Local Bankruptcy Rule 1007-2 and in Support of the Debtors' First Day Motions, dated February 28, 2018 (the "**Bhansali Decl.**"), ECF Doc. No. 2, ¶ 6.

4.  The Debtors are Delaware and New York Corporations. *Id.* at ¶¶ 14-16. FI is a wholly owned subsidiary of FDI. *Id.* at ¶ 18. FDI is a wholly owned subsidiary of Firestar Group, Inc., which is, in turn, a wholly owned subsidiary of Synergies Corporation ("**Synergies**"). *Id.* at ¶ 17. Synergies is wholly owned by Firestar Holdings Limited ("**FHL**"), a Hong Kong corporation. *Id.* at ¶ 17. FHL is a wholly owned subsidiary of Firestar International Limited ("**FIL**"), an Indian corporation. *Id.* Modi is the majority shareholder of FIL. *Id.*

5.  Synergies owns approximately 95% of the equity of AJI; the remainder of the equity is owned by Sam Sandberg. *Id.* at ¶ 19.

3

6. Mihir Bhansali ("**Bhansali**") is the sole director[2] and president of each of the Debtors. *Id.* at ¶ 20. Bhansali is also the sole director and president of FGI and Synergies. *Id.*

7. Bhansali is not listed as an owner of any portion of any of the aforementioned entities. *See id.*

**Events in India**

8. As the Debtors have disclosed to the Court, news reports from India have alleged that Modi, along with certain overseas entities with which he was affiliated, had procured "unauthorized loans from Punjab National Bank ["**PJB**"]. . . ." *Id.* at ¶ 33. The Debtors' principal reports that, according to PJB, the allegedly unauthorized loans exceeded $1 billion. Id. at ¶ 34.[3]

9. In connection with the alleged unauthorized loans, PJB filed a criminal complaint and an investigation by the Indian authorities (the "**Criminal Investigation**") is pending. *See id.* at ¶ 35. Meanwhile, in connection with the Criminal Investigation, the Indian authorities have seized and/or frozen certain assets and properties belonging to Modi and "to various entities in which he had a direct or indirect ownership interest." *Id.* at ¶ 36. As a result of these enforcement actions, "multiple business entities" were shuttered, including "factories which produced most of the fine jewelry merchandise sold by the Debtors" and entities that performed back office and other functions for the Debtors. *See id.*

---

[2] Upon information and belief, the Debtors have recently decided to name an independent director to serve alongside Mr. Bhansali. Morrissey Decl., ¶ 6.

[3] According to the Debtor's principal, it is not clear how much of this amount was attributable to the alleged actions of Modi and the individuals and companies with which he is affiliated. *Id.* at ¶ 34.

4

**The Debtors' Retention of a Chief Restructuring Officer**

10. On March 4, 2018, the Debtors filed a Motion for an Order authorizing them to retain Getzler Henrich & Associates LLC to Provide Mark Samson as Chief Restructuring Officer (the "**CRO**") and Related Services (the "**CRO Motion**") *nunc pro tunc* to the Petition Date. ECF Doc. No. 10; Morrissey Decl., ¶ 4.

11. The CRO is to "report[] directly to the Debtors' sole director,[4] unless and until such time as an independent director is appointed. . . ." CRO Motion, ¶ 9. In addition to developing a restructuring plan for the Debtors, *id.*, the CRO is to perform numerous tasks, including assessing the Debtors' financial condition and needs, "assisting in developing a cash flow budget," assisting in the negotiation of a plan of liquidation, assisting with reporting requirements, protecting the Debtors' fine jewelry assets, and interviewing independent director candidates. *See id.* at ¶ 10.

12. At a hearing held on March 6, 2018, this Court approved the Debtors' retention of the CRO on an interim basis. The Interim Order was entered on March 14, 2018.[5] ECF Doc. No. 34; Morrissey Decl. ¶ 5.

## RELIEF REQUESTED

13. The United States Trustee respectfully requests the appointment of an examiner pursuant to section 1104(c) of the Bankruptcy Code to investigate and report on the circumstances surrounding the alleged fraud involving Modi, the Modi Entities, and the Punjab National Bank. In addition, the examiner would ascertain the extent to which Modi and/or the Modi Entities have the ability to direct and/or influence the Debtors'

---

[4] Presumably, as the Debtors' have appointed an independent director, *see* Morrissey Decl., ¶ 6, henceforth the CRO is to report to that director as well as to Bhansali.

[5] A final hearing on the CRO Motion is scheduled for March 28, 2018.

5

conduct, decisions, or actions the Debtors take in these Chapter 11 cases. The examiner's report would shed light on, *inter alia*, the question as to whether the Debtors' principals should be permitted to continue to operate the Debtor.

14. The principals themselves, in addition to the CRO and any independent director appointed by the principals, cannot be expected to conduct an adequate investigation with respect to the Debtors' connections with their related individuals and entities in India and elsewhere. Nor can these individuals be expected to conduct an impartial investigation into the extent to which Modi or the Modi Entities under his direct or indirect control direct or influence the conduct and decisions of the Debtors. An examiner can look into possible causes of action that the estate may have against these individuals and entities. The examiner can then report his or her findings to the Court.

## **GROUNDS FOR THE RELIEF REQUESTED**

Section 1104(c) of the Bankruptcy Code provides as follows

> (c) If the court does not order the appointment of a trustee under this section, then at any time before the confirmation of a plan, on request of a party in interest or the United States Trustee, and after notice and a hearing, the court shall order the appointment of an examiner to conduct such an investigation of the debtor as is appropriate, including an investigation of any allegations of fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity in the management of the affairs of the debtor of or by current or former management of the debtor, if—
>
>> (1) such appointment is in the interests of creditors, any equity security holders, and other interests of the estate; or
>>
>> (2) the debtor's fixed, liquidated, unsecured debts, other than debts for goods, services, or taxes, or owing to an insider, exceed $5,000,000.

11 U.S.C. § 1104(c).

6

From the express language of the statute, it is apparent that appointment of an examiner is premised on four factors being satisfied: <u>First</u>, the debtor must still be in possession of the estate and a trustee must not have been appointed.[6] <u>Second</u>, a plan must not have been confirmed. <u>Third</u>, a party in interest or the United States Trustee, as is the case here, must request the appointment. <u>Lastly</u>, one of the conditions set out in (c)(1) or (c)(2) must be satisfied – either the appointment of the examiner is in the best interests of the creditors <u>or</u> the specified unsecured debts exceed $5 million. *See, e.g., In re UAL Corp.*, 307 B.R. 80, 84 (Bankr. N.D. Ill. 2004) ("[A]ppointment of an examiner is mandatory if the four conditions are met, but the court retains the discretion to determine the nature and scope of the examiner's investigation"). Here, there cannot be any disagreement on the fact that the first three factors are met. As to the last one, the appointment of the examiner is not only mandatory in this case under the statutory provisions, but such appointment is also warranted for the best interests of creditors, thus satisfying the last factor.

---

[6] The statute expressly provides that the court cannot appoint an examiner if a trustee is appointed. This limitation, however, was not intended to require the denial of a motion to appoint a trustee as a precondition to the appointment of an examiner. *See Keene Corp. v. Coleman (In re Keene Corp.)*, 164 B.R. 844, 855 (Bankr. S.D.N.Y. 1994). In *Keene*, the court rejected the creditors' committee's argument that the court could not appoint an examiner unless it first refused to appoint a trustee, holding that "[a] motion to appoint an examiner stands on its own, and need not be part of an unsuccessful motion to appoint the trustee." *Id.; see also In re Gilman Serv., Inc.*, 46 B.R. 322, 327 (Bankr. D. Mass. 1985) (court granted United States Trustee's motion to appoint examiner, where no separate motion to appoint a trustee had been filed). Similarly, in a number of cases, bankruptcy courts have appointed an examiner *sua sponte*, where no motion to appoint a trustee had been filed. *See In re First Am. Health Care of Ga., Inc.*, 208 B.R. 992, 994 (Bankr. S.D. Ga. 1996); *In re Public Serv. Co. of N.H.*, 99 B.R. 177, 182 (Bankr. D. N.H. 1989); *In re Jartran, Inc.*, 78 B.R. 524, 527 (Bankr. N.D. Ill. 1987); *In re UNR Indus., Inc.*, 72 B.R. 789, 795 (Bankr. N.D. Ill. 1987); *In re Landscaping Serv., Inc.*, 39 B.R. 588, 590-91 (Bankr. E.D. N.C. 1984).

**A.     Examiner Appointment is Mandatory Under Section 1104(c)(2)**

Unlike Bankruptcy Code section 1104(c)(1), which requires examiner appointment if it is "in the interests of creditors," section 1104(c)(2) leaves no discretion to the court where, as here, the claims threshold is met. *See Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500-01 (6th Cir. 1990) (appointment of examiner is mandatory under section 1104(c)(2), based upon the plain meaning of the statute); *see also In re Loral Space & Commc'ns, Ltd.*, No. 04 C.V. 8645RPP, 2004 WL 2979785, at *5 (S.D.N.Y. Dec. 23, 2004) (finding that section 1104(c)(2) mandates the appointment of an examiner where the debt threshold is met and reversing bankruptcy court's finding that if the requested appointment is inappropriate, the bankruptcy court should not stretch to fashion a more appropriate job description for the examiner).

In this case, there is no dispute that the "debtor's fixed, liquidated, unsecured debts, other than debts for goods, services, or taxes, or owing to an insider, exceed $5,000,000". Although the Debtors have not filed their schedules to date, the Debtors have stated that, as of the Petition Date, the amount due and owing from the Debtors to their two lender banks amounted to approximately $20 million. Moreover, FDI's Petition indicates that this sole debtors' liabilities amount to between $50 million and $100 million. Petition, item 16. Accordingly, the case for the appointment of an examiner under section 1104(c)(2) of the Bankruptcy Code is undeniable.

**B.     Examiner Appointment Is Also Justified Under Section 1104(c)(1)**

While the appointment of an examiner in this case is mandated by the provisions of section 1104(c)(2), it should be noted that cause for such appointment exists also under section 1104(c)(1) because it would benefit all creditors. As set forth above, Bhansali

8

acknowledges that Modi, through certain Modi Entities, is the ultimate majority shareholder of the Debtors. *See* Bhansali Decl., ¶ 4. Bhansali also states that the Indian authorities, in connection with the Criminal Investigation, have seized and/or frozen certain assets and properties belonging to Modi and "to various entities in which he had a direct or indirect ownership interest." *Id.* at ¶ 36. Moreover, among the "multiple business entities" that the authorities shut down were "factories which produced most of the fine jewelry merchandise sold by the Debtors," as well as entities that had performed back office and other functions for the Debtors. *See id.* These circumstances warrant an investigation by an independent examiner into, *inter alia*, the relationships between Modi and the Modi Entities and the Debtors. *See, e.g., In re Gilman Servs.*, 46 B.R. 322, 327 (Bankr. D. Mass. 1985) (citation omitted) ("A debtor's sale of assets to a related corporation before the commencement of the bankruptcy case warrants an investigation by an examiner where there are unanswered questions concerning the . . . interrelationship of the parties involved").

Moreover, the absence of an official committee of unsecured creditors makes the case for an examiner even more compelling. A committee, if appointed, could conduct an investigation that the Debtors cannot. However, even a committee investigation may not be sufficient in these cases. Although official committees of unsecured creditors often want to undertake an investigatory role, courts have held that often times an independent examiner is better suited for that role. *See, e.g., In re Keene Corp.*, 164 B.R. 844, 856 (Bankr. S.D.N.Y. 1994) (quoting *1243 20th St., Inc.*, 6 B.R. at 686) ("While a creditors' committee is well suited to overseeing the operations of a business, especially the financial and economic aspects of the debtor's operations, the examiner is far better

9

able to undertake an in-depth investigation, a function warranted by the facts presented here.").

Having an independent third party conduct an investigation as proposed in this Motion and provide a report which would include the viability of any possible claims would save estate funds in that the examiner may be ordered to share any documents or other materials disclosed in the examiner's report, thus potentially reducing expenses of having various parties conducting the same discovery in these cases.

## CONCLUSION

WHEREFORE, the United States Trustee respectfully requests that the Court appoint an examiner to investigate and report on circumstances surrounding the Criminal Investigation involving Modi and the Modi Entities and to determine: : (1) whether and to what extent, if any, the Modi Entities have the ability to direct and/or influence the conduct, decisions or actions taken by the Debtors in these Cases; (2) whether any current officer or director of the Debtors actively and knowingly participated in fraud or dishonesty in the management of the affairs of the Debtors; (3) whether any claims or causes of action in favor of the Debtors may arise from the Alleged Fraud Circumstances; (items (1) through (3) referred to as the "Determinations"), (4) otherwise perform the duties of an examiner as contained within the scope of 11 U.S.C 1106(a)(3)&(4) of the Bankruptcy Code solely to the extent required or necessary to the foregoing

Determinations (collectively, the "Investigation"), and (5) grant such other and further relief as it may deem just and proper.

Dated: New York, New York
March 30, 2018

                Respectfully submitted,

                WILLIAM K. HARRINGTON
                UNITED STATES TRUSTEE, Region 2

By:   */s/ Richard C. Morrissey*
      Richard C. Morrissey
      Trial Attorney
      U.S. Federal Office Bldg.
      201 Varick Street, Room 1006
      New York, New York 10014
      Tel. (212) 510-0500